MINERVA J. SATCHELL, Appellant, v. C. C. ALSOP et al., Appellees.

No. 41625.

OCTOBER 25, 1932.

Thomas J. Bray, for appellant.

McCoy & McCoy and Devitt, Eichhorn & Devitt, for appellees.

ALBERT, J.—On March 1, 1920, the defendants Alsop, Colville and Hamilton purchased from the plaintiff a 78-acre farm, the purchase price of which was $28,000.00. Ten thousand dollars was paid in cash and the remainder of $18,000 was settled by the execution of three promissory notes and a first mortgage on said farm, and the plaintiff's suit herein is to foreclose the said mortgage.

The above-named defendants conveyed the farm to J. H. Klein, and on March 1, 1929, Klein re-conveyed said farm to said defendants. The interest was paid, and on March 16, 1929, $2,000 of the principal indebtedness was paid to the plaintiff. Thereupon the plaintiff and the defendants Alsop, Colville and Hamilton and their respective wives entered into an agreement for the extension of the mortgage, there being still $16,000 due on the farm. The amount and time of payment of said balance due were changed from the provisions of the original contract, making $1,000 payable March 1, 1930, and $1,000 on each successive March 1st up to and including 1934, and the balance of $11,000 due on March 1, 1934, together with the interest, etc. This agreement then continues:

"And it is specifically agreed that if said payments be not made as above provided, these parties will, at once, execute to Minerva J. Satchell, her representatives, heirs, or assigns, a deed to said premises described in said mortgage, said foreclosure being waived and the year of redemption being waived. And it is further agreed that said parties will pay the balance then remaining at the time of the death of said Minerva J. Satchell, if said death shall occur after March 1, 1931, and the parties to this agreement hereby agree that said mortgage shall continue as a first lien upon said premises and said note and mortgage and all the covenants and conditions contained in said note and mortgage shall remain in full force except as herein modified."

The provisions of said mortgage and the extension agreement

not having been complied with, on March 1, 1932, because of the failure of the defendants to make payment as therein provided, the purchasers of said property, together with their respective wives, executed and acknowledged a warranty deed to said property on the 5th day of March, 1932, re-conveying said property to the plaintiff, and on that date turned said deed over to the sheriff, accompanied by a letter to the plaintiff, which letter and deed were given by the sheriff to the plaintiff on the same day. This letter reads as follows:

"Mrs. Minerva Satchell,

"Oskaloosa, Iowa.

"Dear Madam: In compliance with the agreement entered into by you with the undersigned on or about the 16th day of March, 1929, by the terms of which agreement we were to execute to you a deed to the property described in the mortgage referred to in said agreement, we have this day executed a warranty deed conveying said property to you, as provided in said contract, and the same will be delivered to you by the sheriff of Mahaska county, Iowa, today with this letter.

"This letter will further advise you that the insurance policy on said buildings expires March 6, 1932, so that if you desire the insurance continued, or to get other insurance, you will have an opportunity to do so.

"We also beg to advise you that the taxes for the year 1931, payable in 1932, have been paid by us and the property is free and clear of all liens." Signed by Colville, Alsop and Hamilton.

The plaintiff in this action is a widow eighty-four years of age, and is dependent largely upon her son-in-law, Homer Hull, to look after her business affairs. Upon receipt of the above letter, she immediately notified Hull to come and look after this matter for her, and he appeared on the 7th day of March (the 6th being Sunday), and thereupon plaintiff wrote a letter to the defendants and returned the deed to them on the last-named date. The substance of this letter is as follows:

"I am returning deed herewith. I cannot accept this deed as in any way a settlement of the indebtedness secured by the mortgage, which mortgage indebtedness you agreed to pay in the agreement for extension of mortgage dated the 16th day of March, 1929. I am compelled to demand that you pay said indebtedness in

accordance with your note and agreement, $1,000 being due on the first day of March, 1932, and according to the mortgage the failure to pay said sum makes the entire mortgage indebtedness become immediately due and payable, and action will have to be brought to foreclose the mortgage and obtain judgment, if the said sum of $1,000 be not immediately paid."

This deed was shuttled back and forth between the defendants and the plaintiff several times, but the plaintiff at all times refused to accept it.

On the 5th day of March, 1932, one Gordon, an insurance agent, appeared at the plaintiff's residence, having been advised by the defendants that they had delivered the deed to the farm to the plaintiff. He testified that he told her she had a right, as the holder of the mortgage, to insure it. "I never did deliver the policy to her. I never asked her to pay for this policy."

The policy contained a copy of the application and note signed by the plaintiff. The application contained two questions relative to the title and ownership of the property which are not answered. As to the question of what was the nature of her title, the answer is, "deed." Another question is: "Is the land described mortgaged?" The answer is, "no."

Gordon further said that the defendants advised him they had re-deeded the property to Mrs. Satchell and for him not to take on any insurance on that place in their name. He further testified:

"On the evening of the 5th of March, Homer Hull, the plaintiff's son-in-law, called me on the telephone. He said he wanted to talk with me about the policy I had Mrs. Satchell make application for, and suggested that it was not the proper thing for her to make application for the insurance. I told him that my thought was merely to get the buildings insured, regardless of who the owner was; that was my only interest in it; that I had written this application for Mrs. Satchell and that it was to be subject to her approval and his approval. She [Mrs. Satchell] told me she was waiting for Mr. Hull's arrival before she would do anything about the matter.".

The evidence in the case further shows that one Robert Steen had rented this farm for a number of years, and was in possession of the same at the time the litigation was pending, under a lease

between him and the defendants which provided for $750 rental, and covered a period from March 1, 1932.

Appellees stated in their brief and argument that "the only issue tendered by the pleadings is whether the defendants executed and delivered to the plaintiff a warranty deed to the property covered by the mortgage, as provided in the extension agreement. If they did, then the said mortgage was satisfied, paid, extinguished, canceled and released."

Appellees having won below and lodging themselves upon this proposition, we accept it for the purposes of this case and give attention to the same.

That the defendants executed the deed in question is beyond dispute. The question whether the deed was legally delivered to Mrs. Satchell and accepted by her is the nub. The lower court held in its decree that the plaintiff refused to accept said deed, and with this contention we are disposed to agree. Of course, the deed was physically delivered to her by the sheriff, and probably by mail later, but she at all times and under all circumstances refused to accept the same.

At this point the defendants insist that the plaintiff in her reply filed to the answer of the defendants "admitted the execution and delivery of the deed, but alleges that the same did not comply with the extension agreement."

Reference, however, to the reply does not sustain this contention, as it states, after admitting the execution of the extension agreement: "The plaintiff denies each and every other statement and allegation contained in the said paragraph of said answer; and further states that the warranty deed which the defendants claim to have executed * * * does not comply with the provisions contained in said Exhibit E" (said extension agreement). It can not be said, therefore, that the reply admits the delivery of the deed.

The defendants at this point, however, state: "It is, however, entirely immaterial whether or not the plaintiff accepted the deed." Defendants claim that under the contract all they were required to do was to execute and deliver the deed to the plaintiff, and when they did so, the debt which the mortgage was given to secure was satisfied, paid, extinguished, canceled and released. We turn therefore to the extension agreement, heretofore set out, and it will be noted that there is no specific provision therein that by delivery of this deed to the plaintiff, the mortgage indebtedness is to be "satis-

fied, paid, extinguished, canceled and released." If such result is obtained it must be by. reason of some construction the law will place upon or add to the terms of this contract.

It is apparent on the face of it that this provision as to the execution of this deed to the plaintiff on a breach of the terms of the contract was wholly for plaintiff's benefit, and she had a right to avail herself of such benefit or reject the same as she saw fit. The situation is analogous to a contract for the sale of land wherein certain provisions are made for the benefit of the vendor, and we have held that, under such circumstances, the vendor has an election as to whether or not he will avail himself of such provisions, and we know of no holding which compels him to accept the benefits of such provision. Our holdings are contrariwise. See Barrett v. Dean, 21 Iowa 423; Sigler v. Wick, 45 Iowa 690; Earle v. Rehmann, 214 Iowa 784.

So far, therefore, the plaintiff never having accepted said deed, the defense made must fail.

The defendants assert that there is an implied obligation on the part of the plaintiff to accept the same when tendered. We do not think the doctrine of implied obligation to accept has any application to the case, in view of the fact that we have an original agreement herein, and in view of the fact that the plaintiff had the option to accept or reject as she saw fit; and having exercised this option , and refused the deed, there is no opportunity for applying the doctrine of implied obligation to accept.

It is further insisted that under the contract they could either pay the mortgage or could deed back the property. As we have heretofore suggested, the option was not with them, but with the plaintiff.

It is further insisted that the execution and delivery of the deed extinguished the mortgage debt. With this we cannot agree. The premise is wrong because, as we have heretofore held, there was never any legal delivery of this deed. Whether or not, if plaintiff had accepted the deed, it would have extinguished the debt is another question.

A motion was filed to dismiss this appeal, which motion was ordered submitted with the case. The motion is overruled because it was filed too late.

We can see no foundation for the action of the court in holding that this debt was paid, and canceling the mortgage accordingly.

In this respect we think the court erred and the defense made herein was unavailing. There was no reason why the court should not have decreed a foreclosure of the mortgage as prayed.—Reversed.

STEVENS, C. J., and EVANS, KINDIG, and BLISS, JJ., concur.